IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JULIE MAYABB, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-05-487-L |
| | ) | |
| ST. ANTHONY HOSPITAL, OKLAHOMA | ) | |
| CITY, OKLAHOMA d/b/a/ St. Anthony's | ) | |
| corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**O R D E R**

Plaintiff Julie Mayabb, appearing *pro se*, brings this action against her
former employer St. Anthony Hospital ("defendant" or "St. Anthony") alleging
sexual harassment, gender discrimination, unequal pay, and retaliation. This
matter is before the court on the Motion for Summary Judgment filed by St.
Anthony.  The court file reflects that plaintiff has not responded to the Motion for
Summary Judgment.  The court has carefully reviewed the briefs and exhibits
submitted by defendant in support of summary judgment.  Based upon this
review, the court determines that St. Anthony is entitled to summary judgment as
a matter of law on plaintiff's claims.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); <u>accord</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509, 91 L. Ed. 2d 202 (1986).  The moving party bears the initial burden of showing that there is an absence of any issues of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); <u>Hicks v. City of Watonga</u>, 942 F.2d 737, 743 (10th Cir. 1991).  If the moving party meets this burden, the non-moving party then has the burden to come forward with specific facts showing that there is a genuine issue for trial as to the elements essential to the non-moving party's case.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1355-56, 89 L. Ed. 2d 538 (1986); <u>Bacchus Indus., Inc. v. Arvin Indus., Inc.</u>, 939 F.2d 887, 891 (10th Cir. 1991).  To sustain this burden, the non-moving party cannot rest on the mere allegations in the pleadings.  Fed. R. Civ. P. 56(e); <u>Celotex</u>, 477 U.S. at 324, 106 S. Ct. at 2553; <u>Applied Genetics Int'l. v. First Affiliated Sec., Inc.</u>, 912 F.2d 1238, 1241 (10th Cir. 1990). The non-moving party must point to specific facts, "by any of the kinds of evidentiary materials listed in Rule 56(c), except the pleadings themselves," to avoid summary judgment.  <u>Celotex</u>, 477 U.S. at 324.  Such evidence includes reference to affidavits, deposition transcripts, or specific exhibits.  <u>Thomas v.</u>

Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992).  The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court.  Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998).  Although the district court has the discretion to go beyond the referenced portions of the supporting material, it is not required to do so.  Id.

In a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.  Bryant v. O'Connor, 848 F.2d 1064, 1067 (10th Cir. 1988).  The mere possibility that a factual dispute may exist, without more, is not sufficient to overcome a convincing presentation by the moving party.  Allegations alone will not defeat summary judgment.  Cone v. Longmont United Hosp. Ass'n., 14 F.3d 526, 530 (10th Cir. 1994).

In support of its Motion for Summary Judgment, St. Anthony provided the following statement of undisputed material facts.  As they are unchallenged by plaintiff, the court adopts the following facts submitted by St. Anthony as undisputed for purposes of summary judgment (citations to the record are omitted):

1.  The plaintiff was hired by St. Anthony on July 9, 2001, as a Mental Health Tech ("MHT") I in the Accents program at an hourly pay rate of $7.63.  The Accents program is a treatment program for the evaluation and treatment of children and adolescents with chronic emotional and behavioral problems as well as mild to moderate mental retardation.

2.  The plaintiff was terminated on January 20, 2005 after admitting to clocking in another employee, Charles Mayabb[1] ("C. Mayabb"), who was also terminated.  Clocking in another employee is a Group 3 violation under St. Anthony policy, and is cause for immediate termination.  C. Mayabb dated the plaintiff and at times acted as charge nurse, and therefore sometimes supervised the plaintiff.

3.  The requirements for the position of MHT I for the relevant time period are that the applicant had obtained a high school diploma or GED or equivalent experience preferred.

4.  The compensation for a MHT I position is based upon whether the applicant has experience in a mental health environment, although experience is not mandatory.  The plaintiff had two years of experience.

---

[1]      The plaintiff and C. Mayabb began to develop a relationship while employed at St. Anthony and were married on March 18, 2005.  They are separated at the present time.  C. Mayabb was originally a plaintiff in this lawsuit, however, his claims against St. Anthony were dismissed without prejudice.

5.   The plaintiff did not receive a high school diploma, however she obtained a GED.  The plaintiff did not have a bachelor's degree in mental health, chemical dependency or a related filed.

6.   On May 19, 2002, the plaintiff was promoted to MHT II.

7.   The requirements for the position of MHT II for the relevant period are a bachelor's degree in mental health, chemical dependency or related field preferred or demonstrate competency in group processing.

8.   At the time of the plaintiff's hire in July 2001, she did not have the experience required for the MHT II position.

9.   The plaintiff gained the experience in group processing in the mental health environment, as required for the position of MHT II, while employed at St. Anthony as a MHT I.

10.   The plaintiff received the standard 10% promotional salary increase due to her promotion from MHT I to MHT II, resulting in a new hourly rate of $8.39.

11.   In 2003 and 2004, in each of the plaintiff's annual evaluations, she received 3% raises.

12.   On January 10, 2005, the plaintiff complained of pay discrimination alleging that Marques Warrior, MHT II, was paid at a higher hourly rate than she.

13.   The plaintiff now alleges that male MHTs I or II, Ed Marshall, Steve Murrell, Chris James, Carl Record, Genaro Pratcher, Glenn Sands, Jeron Lott and Stacy Reece, were compensated at a higher rate of pay than the plaintiff.

14.   The plaintiff testified she was unaware of these male employees' educational background and prior professional experience before their employment with St. Anthony, but still believed they were paid more because of their gender.

15.   On January 20, 2005, St. Anthony presented the plaintiff with a check reflecting retroactive pay due to an error it found during the investigation into the plaintiff's claims.  The error was that although the plaintiff did receive the standard 10% raise when promoted from MHT I to MHT II, the increase did not bring the plaintiff to the minimum of the pay range for the plaintiff's grade.  St. Anthony corrected the plaintiff's hourly rate for the years 2002, 2003 and 2004 to bring her promotion rate to the minimum of the MHT II pay grade as well as the plaintiff's two 3% merit increases.

16.   The salaries of each of the male MHTs I and II of which the plaintiff is complaining are based upon the applicant's education, experience and years of employment with St. Anthony.

17.   The plaintiff read the employee handbook and understood St. Anthony's policy for reporting sexual harassment.

18.   Comments written on the plaintiff's May 19, 2003 evaluation form stated that the plaintiff's "dress [was] borderline at times."

19.   While the plaintiff was engaged in a therapeutic hold of a child, the plaintiff's supervisor, Guana Hart, told the plaintiff her underwear was showing.

20.   After the plaintiff read the comment on the May 19, 2003 evaluation regarding her dress, she did not complain to any of her supervisors or Human Resources, that she disagreed with the comment.

21.   The plaintiff agrees that it is appropriate to maintain a dress code in the workplace and that it is inappropriate in a therapeutic environment, working with children, to have visible underwear.

22.   The environment in which the plaintiff worked was with children with sexual perpetration and violence issues.

23.   As Clinical Coordinator, Gary Humphrey was the plaintiff's supervisor in 2004.

24.   In approximately late August, 2004, the plaintiff complained to Humphrey that Hart glared and stared at her, which made her feel uncomfortable. Humphrey told the plaintiff that he would talk to Hart.

25.   Prior to Humphrey speaking with the plaintiff in August 2004 regarding her complaint about Hart, Humphrey was already investigating a complaint made on July 12, 2004 by Ed Marshall, another MHT.  Marshall's complaint included

allegations that Hart was upset at Cutchall because he looked at the plaintiff's chest.

26. After the investigation into Marshall's complaint, Humphrey concluded that Hart had not been engaging in harassing conduct towards the plaintiff. After a review of the program's future development and business needs and addressing those needs, Hart and Cutchall were reassigned to separate shifts.

27. Initially the plaintiff believed that Hart stared at her due to medical issues with Hart's breasts, however, the plaintiff later came to believe that Hart stared and glared at the plaintiff because she was upset that a charge nurse, Jim Cutchall (one of plaintiff's supervisors), stared at the plaintiff's breasts. It is not the plaintiff's claim that Hart stared at the plaintiff because she had sexual desires for her.

28. Hart's hostility was directed only at the plaintiff and not any other female employee.

29. The plaintiff stated that Cutchall made comments to her such as she "shouldn't wear white"; referred to the plaintiff as "Jules"; asked an employee when he telephoned for the plaintiff if he wanted to speak to [the plaintiff] and [her] lovely two assets"; asked the plaintiff if she was with her son's father because he "paid for her boobs"; and that he stared at her breasts.

30. The plaintiff did not witness Cutchall staring at her breasts, nor did she ever complain to anyone about Cutchall's comments.

31.  The plaintiff waited so long to complain about Hart because she had a "general fear" and a "feeling" she would be terminated in retaliation for complaining to Humphrey, and that he was friends with Cutchall and Hart.

32.  Humphrey did not threaten to terminate the plaintiff.

33.  On October 6, 2004, the plaintiff submitted an anonymous written complaint to Human Resources, complaining of inappropriate management by Humphrey.

34.  The plaintiff alleged other employees were not written up for committing certain infractions under Humphrey's watch.  The plaintiff was not written up either.

35.  On October 6, 2004, the plaintiff submitted another written complaint, however this time disclosing her identity, to Debra Logan, Human Relations Advisor.  The plaintiff stated that Humphrey sexually harassed the plaintiff when he asked her whether she and C. Mayabb were intimate after he heard from other employees that C. Mayabb may have physically beaten the plaintiff as she arrived at work with two black eyes.  The plaintiff also complained that a nurse by the name of Laura Torneten harassed her by glaring at her and making negative comments to her because she was angry that the plaintiff was dating C. Mayabb. In this complaint, the plaintiff did not report sexual harassment by Cutchall or Hart.

36.  Humphrey's question to the plaintiff regarding whether she was intimate with C. Mayabb was the first time he had ever asked the plaintiff anything of a sexual nature.  Humphrey never again asked the plaintiff anything of a "sexual" nature.

37.  Torneten did not have any sexual interest in the plaintiff.  Torneten directed her alleged hostility to only the plaintiff, and to no other females in the workplace.

38.  St. Anthony conducted an investigation into the plaintiff's October 2004 complaint and on December 30, 2004, notified the plaintiff of its conclusion that no hostile environment existed.  St. Anthony issued written counseling to Humphrey.  However, with respect to the plaintiff's complaints against Torneten, the investigation was still ongoing.  St. Anthony also advised the plaintiff to notify them of any other situations the plaintiff deemed inappropriate.

39.  During St. Anthony's investigation into the plaintiff's October 6, 2004 complaint, Logan was also investigating various complaints made by C. Mayabb and others.

40.  In addition, on December 17, 2004, MHT II Carl Record complained that the plaintiff clocked in C. Mayabb for his shift.  While investigating the plaintiff's, C. Mayabb's, and other employees' complaints, Logan obtained statements from numerous employees, including the plaintiff and C. Mayabb, regarding Record's complaint.  C. Mayabb first denied the plaintiff clocked him in

for work, however, after further investigation by St. Anthony, later admitted the plaintiff did indeed clock him in for his shift.

41.  On December 30, 2004, the plaintiff admitted to clocking in C. Mayabb for his shift.

42.  On December 30, 2004, the plaintiff complained that Hart sexually harassed her by asking her to wear a jacket and not to wear certain tops.

43.  In response to St. Anthony's outcome of its investigation into the plaintiff's October 6, 2004 complaint, the plaintiff, on January 10, 2005, submitted another written complaint to Human Resources, which included complaints of sexual harassment by Hart and Humphrey.  The plaintiff did not complain that Cutchall sexually harassed her.

44.  On January 20, 2005, the day of plaintiff's termination, St. Anthony informed the plaintiff that appropriate action would be taken with regard to Torneten's comments previously complained of by the plaintiff.  Torneten received written counseling.

45.  Although the plaintiff never reported anyone she observed clocking in another employee, she claimed she saw it done "a hundred times."

46.  The plaintiff made complaints that other employees committed various violations of St. Anthony policy, which included not clocking out when they left the campus.  The plaintiff does not remember if she reported all of the alleged incidents to management.

47.  It was standard practice and not against company policy for employees not to clock out for lunch or breaks as they were automatically docked for lunch and breaks were paid.

48.  On January 24, 2005, the plaintiff submitted a letter to St. Anthony responding to her termination of employment, in which she claimed she had evidence of discrimination.  The plaintiff did not provide any evidence of discrimination with the letter.

49.  On March 4, 2005, St. Anthony responded to the plaintiff's January 24, 2005 letter, stating it would revisit the investigation regarding plaintiff's complaints of discrimination, and in order for a proper reinvestigation to be performed, the plaintiff would be required to provide the evidence the plaintiff stated she possessed or the investigation would be considered final.  The plaintiff never provided the requested information to St. Anthony.

50.  On January 19, 2005, the plaintiff visited the EEOC, and after meeting with the EEOC investigator, decided not to file a charge at that time.  The plaintiff did not inform anyone at St. Anthony Hospital either before or after she visited the EEOC of her intention to file a charge or complaint.

51.  On February 3, 2005, the plaintiff filed a charge of discrimination against St. Anthony with the EEOC.  The same day, the EEOC mailed to the plaintiff a Dismissal and Notice of Rights.

Based upon these undisputed facts, defendant argues that summary judgment is appropriate on plaintiff's sexual harassment claim because the alleged harassment is not sufficiently severe or pervasive, and because St. Anthony took appropriate remedial action.  St. Anthony asserts that summary judgment in its favor should also be granted on plaintiff's equal pay claim because plaintiff has failed to show any evidence of unequal pay based on gender and St. Anthony's actions were based on factors other than sex.  Finally, St. Anthony argues that summary judgment should be granted on plaintiff's retaliation claim because plaintiff has failed to establish a causal connection between her actions and any adverse employment action.  In this regard, St. Anthony asserts that plaintiff was fired for undisputably legitimate and lawful reasons.

Hostile environment harassment occurs where a supervisor's or co-worker's conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.  Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).  To prevail under a hostile work environment theory, a plaintiff must show that sexual conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.  Martin v. Nannie and the Newborns, 3 F.3d 1410, 1418 (10th Cir. 1993).  For sexual harassment to be

actionable, it must be sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment.  106 S.Ct. at 2405, 3 F.3d at 1418.  A plaintiff must show evidence of a steady barrage of opprobrious comments.  Bolden v. PRC Inc., 43 F.3d 545 (10th Cir. 1994).

Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment - an environment that a reasonable person would find hostile or abusive - is beyond Title VII's purview.  Harris v. Forklift Systems, Inc., 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).  Whether an environment is hostile or abusive can be determined only by looking at all of the circumstances.  Id. at 371.  These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. Id.   The mere utterance of a statement which engenders offensive feelings in an employee would not affect the conditions of employment to a sufficiently significant degree to violate Title VII. Meritor, 477 U.S. at 69. A plaintiff cannot withstand summary judgment without presenting evidence that she gave her employer sufficient information to make a reasonable employer think there was some probability that she was being sexually harassed. Zimmerman v. Cook County Sheriff's Department, 96 F.3d 1017, 1019 (7th Cir. 1996).

14

The court finds that plaintiff's hostile environment claim cannot survive summary judgment because she has not presented sufficient evidence of a steady barrage of opprobrious comment required to show a hostile work environment.  Plaintiff has failed to demonstrate that the workplace was permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.

Even construing the undisputed facts in plaintiff's favor, the court finds that they do not give rise to a hostile work environment as judged by the reasonable person standard.  The court finds that under the totality of the circumstances presented, St. Anthony is entitled to summary judgment on plaintiff's claim of hostile work environment sexual harassment under Title VII.  Furthermore, the court finds that plaintiff has failed to come forward with sufficient evidence to establish a genuine issue of fact that the employer's response was unreasonable. *See* Wilson v. Tulsa Junior College, 164 F.3d 534, 541 n.4 (10th Cir. 1998).

In general, a plaintiff may establish discrimination by means of the three-part framework enunciated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  Under the McDonnell Douglas analysis, the plaintiff bears the initial burden of establishing a prima facie case of discrimination.  Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).  If the plaintiff succeeds in proving

the prima facie case, the burden shifts to the defendant to articulate some legitimate nondiscriminatory reason for the adverse employment action. Id. Should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination.  Id.

Assuming *arguendo* that plaintiff has established a prima facie case of discrimination, defendant has rebutted plaintiff's prima facie case by articulating a legitimate, nondiscriminatory reason for its employment decisions regarding plaintiff.  Thus, it is incumbent upon plaintiff to present sufficient evidence that the proffered reason was a pretext for discrimination.  *See* Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995).  To establish pretext, a plaintiff must show "either . . . that a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence."  Tex. Dep't of Cmty Affairs v. Burdine, 450 U.S. 248, 256 (1981).

Evidence of pretext may include, but is not limited to, the following: prior treatment of plaintiff, the employer's policy and practice including statistical data, disturbing procedural irregularities, and the use of subjective criteria.  Simms v. Oklahoma ex rel Dep't of Mental Health and Substance Abuse Servs., 165 F.3d 1321, 1328 (10th Cir. 1999).  Pretext can be shown by weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the

employer's proffered legitimate reasons for its action such that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.  Hardy v. S.F. Phosphates, Ltd. Co., 185 F.3d 1076, 1079 (10th Cir. 1999).  The plaintiff's facts must be strong enough to show that a discriminatory intent more likely motivated defendant than defendant's stated reason.  Cone v. Longmont United Hosp. Assoc., 14 F. 3d  526, 530 (10th Cir. 1994).

Plaintiff has the ultimate burden of proving that defendant discriminated against her.  See Ortega v. Safeway Stores, Inc., 943 F.2d 1230, 1237 (10th Cir. 1991).  At the summary judgment stage, the court determines whether the evidence, interpreted in the light most favorable to plaintiff, "could persuade a reasonable jury that the employer had discriminated against the plaintiff."  Jones v. Unisys Corp., 54 F.3d 624, 632 (10th Cir. 1995).  The "mere existence of a scintilla of evidence in support of the nonmovant's position is insufficient to create dispute of fact that is 'genuine.'"  Lawmaster v. Ward, 125 F.3d 1341, 1347 (10th Cir. 1997).

Even if the court were to assume for the sake of argument that plaintiff has established a prima facie case of gender discrimination based upon unequal pay, the court finds that St. Anthony has submitted uncontroverted evidence to demonstrate that the differences in pay identified by the plaintiff are based on factors other than sex, such as experience, education, merit raises over years of

17

employment, salary history in other positions, and promotion/demotion pay policies. Plaintiff has failed to raise a genuine issue of fact concerning whether the differentials in pay were not justified by the reasons articulated by St. Anthony. Thus, the court finds that summary judgment is appropriate on plaintiff's claims under the Equal Pay Act.

In order to establish a prima facie claim for retaliation, a plaintiff must show: 1) she engaged in protected opposition to discrimination or participation in a proceeding arising out of discrimination; 2) adverse action by the employer subsequent to the protected activity; and 3) a causal connection between the employee's activity and the adverse action. Archuleta v. Colorado Dept. of Institutions, 936 F.2d 483, 486 (10th Cir. 1991). Plaintiff has failed to come forward at the summary judgment stage to show that St. Anthony's proffered reasons for her termination, *i.e.,* that she clocked in for another employee, were pretextual. Although one of the established methods of proving pretext is to show that the employer treated the plaintiff differently from other similarly situated employees who violated work rules of comparable seriousness, *see* Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1230 (10th Cir. 2000), the court agrees with St. Anthony that plaintiff has never sufficiently identified co-workers who allegedly committed violations of comparable seriousness who were not terminated. The plaintiff bears the burden of establishing the other employees to which she compares herself  are actually "similarly situated." Kelley v. Goodyear

Tire & Rubber Co., 220 F.3d 1174, 1178 (10th Cir. 2000).  Plaintiff's reliance on

her own subjective perceptions of improper reasons for her termination are

insufficient to defeat defendant's motion for summary judgment.  *See* Metro Oil

Co. v. Sun Refining & Mktg. Co., 936 F.2d 501, 504 (10th Cir. 1991).

As previously noted, the court file reflects that plaintiff has not responded to

the Motion for Summary Judgment within the time limits prescribed by the Local

Rules.  According to Local Rule 7.1(e), any motion which is not opposed within

eighteen (18) days may, in the discretion of the court, be deemed confessed.

Although plaintiff is appearing *pro se*, she is required to comply not only with the

Local Rules of this court but also with the applicable Federal Rules of Civil

Procedure.  DiCesare v. Stuart, 12 F.3d 973, 979 (10th Cir. 1993).

The court has not merely deemed St. Anthony's dispositive motion

confessed due to plaintiff's failure to properly respond to the fully supported

motion, however.  The court has considered the undisputed facts and has

thoroughly reviewed the arguments and exhibits submitted by St. Anthony in

support of its motion.  Upon this review, and upon consideration of the legal

authorities presented, the court determines that St. Anthony's is entitled to

summary judgment as a matter of law.

In summary, St. Anthony is entitled to summary judgment on all of plaintiff's

claims.  Defendant St. Anthony's Motion for Summary Judgment **[Doc. No. 47]**

should be and is hereby **GRANTED** in its entirety.  Judgment will issue on a

separate document in accordance with the Federal Rules of Civil Procedure.

It is so ordered this 5th day of June, 2006.

TIM LEONARD
United States District Judge